UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAVOR FAVELA PACHECO, et al.,<br>Plaintiffs,<br>v.<br>TODD BLANCHE, et al.,<br>Defendants. | Case No. 26-cv-11283-AMO<br><br>**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 5 |

Before the Court is a motion for temporary restraining order ("TRO"). Plaintiffs Navor Favela Pacheco ("Mr. Favela"), Ofelia Favela Soto ("Mrs. Favela"), and their U.S. citizen daughter Ofelia "Bella" Favela Soto ("Bella") seek an order under the Administrative Procedures Act ("APA") postponing the effective date of the government's rescission of the "Expedite Policy." The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for October 16, 2026, is VACATED. *See* Civil L.R. 7-1(b), Fed. R. Civ. Pro. 78(b). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the Court **DENIES** Plaintiffs' motion for the following reasons.

## I. BACKGROUND

Plaintiffs are citizens and nationals of Mexico residing in the United States for over 20 years. Mr. Favela has resided in the United States since February 2000, and Mrs. Favela since April 2001. They are married and have two children together, both of whom are citizens of the United States. Dkt. No. 1 ("Compl.") ¶¶ 82-83. Plaintiffs' 20-year-old daughter, Ofelia "Bella" Favela Soto is a United States citizen born on October 22, 2005, who has lived her entire life in her parents' care. Bella was identified at birth with bilateral, profound, sensorineural hearing loss. Dkt. No. 1-2 at 1. Bella has faced a range of health issues since that diagnosis, and she

United States District Court
Northern District of California

significantly relies on her parents. Bella's evaluating psychologist identified Bella's parents as a protective factor essential to her development and concluded that separation from them would be highly detrimental to her psychological, physical, developmental, and educational well-being. *Id.* at 69. Bella will turn 21 years old on October 22, 2026.

Mr. and Mrs. Favela are presently in removal proceedings before the San Francisco Immigration Court. The proceedings commenced with Notices to Appear (NTA) dated May 15, 2020, issued after the San Francisco Asylum Office denied their asylum applications. Dkt. No. 1-3 at 2-3. Plaintiffs applied for cancellation of removal, and their merits hearing took place on April 26, 2023, and July 27, 2023. Dkt. No. 1-3 at 20, 22.

On July 27, 2023, the Immigration Judge ("IJ") indicated that he would reserve his decision to grant Plaintiffs' applications for cancellation of removal until a visa became available for them. Dkt. No. 1-6 at 34. Cognizant that Bella was then 17 and that the wait for a visa number would likely exceed four years, the IJ advised Plaintiffs' counsel to file a motion for an expedited decision before Bella turned 21: "So it might be in your interest to try to expedite. This case. I think there's some time here. . . . So maybe, you know, a year before she turns you might want to get moving on it to be on the safe side." Dkt. No. 1-6 at 35-37. The IJ explained that the decision would be "not my call," as he would have to ask his superiors whether they would "go along with it." *Id.* at 36. DHS, for its part, stated that it would not appeal a grant based on hardship to Bella. *Id.* at 36.

Because only 4,000 people annually may be granted cancellation of removal relief of the type sought by Plaintiffs, a grant number is normally not available at the time of hearing. 8 U.S.C. § 1229b(b)(1). Due to the ever-present backlog, the agency places people with a "reserved" decision on a waiting list for when a number becomes available. 8 U.S.C. § 1229b(e), 8 C.F.R. § 1240.21.

Plaintiffs allege the "Expedite Policy" allowed an IJ to issue a final grant before a qualifying child turned 21 when the applicant's place in the queue made adjudication of the cancellation of removal prior to the qualifying child's birthday unlikely. In all cases in which the Expedite Policy is implicated, an IJ has necessarily completed a hearing on the merits and

indicated an intention to grant relief because of the exceptional and extremely unusual impact on the child of their parents' removal. Such expedited, or "out-of-order," grants utilized one of 500 visa numbers reserved each fiscal year for detained cases and other humanitarian purposes from the annual allotment of 4,000 grants. The Expedite Policy was not published in the Federal Register, the EOIR Policy Manual, or other publicly accessible government sources, it was implemented and treated within EOIR as an established policy and procedure.

In early 2025, the Assistant Chief Immigration Judge (ACIJ) informed IJs in San Francisco that the Expedite Policy was suspended and that the Office of the Chief Immigration Judge would not respond to requests for expedited or out of order visa numbers. Dkt. No. 1-5 at 48, 51, 56.

On September 16, 2026, Plaintiffs filed an emergency motion for an expedited decision on their EOIR-42B, Application for Cancellation of Removal for Certain Non-Legal Permanent Residents, in anticipation of Bella's 21st birthday on October 22, 2026. Dkt. No. 1-4. The motion remains pending.

## II. DISCUSSION

Plaintiffs seek a temporary restraining order to postpone the effective date of the government's rescission of the Expedite Policy for cancellation of removal. *See* Dkt. No. 5. The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, movants may show "serious questions going to the merits" and a balance of hardships that tips sharply in their favor, provided that the other elements are satisfied. *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). "Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factor – the balance of equities and the public interest – merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation & internal quotation marks omitted).

Defendants contend that Plaintiffs cannot show a likelihood of success on the merits because Title 8 U.S.C. § 1252 strips the District Court of jurisdiction over issues arising from removal proceedings, like the application of the Expedite Policy. Under Title 8 U.S.C. § 1252(a)(5), "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter[.]" Further, Title 8 U.S.C. § 1252(b)(9), entitled "[c]onsolidation of questions for judicial review" states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction . . . to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). These judicial review provisions "were designed to make perfectly clear 'that only courts of appeals – and not district courts – could review a final removal order,' that 'review of a final removal order is the only mechanism for reviewing any issue raised in a removal proceeding,' and that the statute was 'intended to preclude all district court review of any issue raised in a removal proceeding.' " *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1034 (9th Cir. 2016) (quoting H.R. Rep. No. 109-72, at 173).

The distinction between claims arising from removal proceedings and independent claims turns on the relief sought. *Martinez v. Napolitano*, 704 F.3d 620, 622-23 (9th Cir. 2012). For example, in *Martinez*, the court held that a plaintiff's APA challenge to the Board of Immigration Appeals' denial of asylum, withholding of removal, and relief under the Convention Against Torture was an impermissible attempt to review the removal order. *Id.*, 704 F.3d at 621-22. And in another case, the Ninth Circuit held that claims about the right to counsel in removal proceedings were subject to the petition-for-review process rather than review in district court. *J.E.F.M.*, 837 F.3d at 1029, 1035.

Claims "inextricably linked" to the removal order are reviewable only through a petition to the Ninth Circuit. *Martinez*, 704 F.3d at 623. A challenge to the statutory cap for cancellations of

removal necessarily implicates the 4,000-grant cap and "arises from" the removal proceedings. *Gomez v. McAleenan*, No. 19-CV-04199-JCS, 2019 WL 5722619, at *3-4 (N.D. Cal. Nov. 5, 2019). In *Gomez*, the plaintiff sought cancellation of removal due to hardship to her son, and she was placed in the queue after the cap was reached. *Id.* at *1. The court dismissed her federal lawsuit for lack of jurisdiction because the challenge to agency procedures was inextricably linked to the removal order. *Id.* at *1, *4 (rejecting argument that Title 8 U.S.C. § 1252 did not govern because a removal order had not been issued).

Here, the Court begins by reviewing the relief sought to determine whether Plaintiffs' claims arise from removal proceedings or are independent claims. *See Martinez*, 704 F.3d at 622-23. Plaintiffs request a TRO

> postponing the effective date of the challenged Rescission of the cancellation of removal Expedite Policy . . . and all action reasonably necessary to ensure plaintiffs and other impacted parties receive the opportunity to benefit from the policy, including by processing Plaintiffs' pending September 16, 2026 motion to expedite under the Policy before Bella's twenty-first birthday on October 22, 2026.

Dkt. No. 5 at 30. Plaintiffs, in essence, seek cancellation of removal based on the Expedite Policy. Contrary to Plaintiffs' repeated argument that this APA action is collateral to their removal proceedings, Dkt. No. 5 at 15-25 & Dkt. No. 17, these Plaintiffs' requested relief is inextricably linked to their removal proceedings. *Gomez*, 2019 WL 5722619, at *3-4; *see also Gomez Alvarez v. Blanche*, No. 26-CV-06530-LB, 2026 WL 2395237, at *4 (N.D. Cal. Aug. 17, 2026) (rejecting identical argument that APA challenge was collateral to removal proceedings); *Suarez Soto v. Blanche*, No. 3:26-CV-01700-JSC, 2026 WL 1454308, at *7-8 (N.D. Cal. May 22, 2026) (same). Because Plaintiffs' claims arise from their removal proceedings, the Court lacks jurisdiction over this APA action. 8 U.S.C. § 1252(b)(9). Therefore, the Plaintiffs cannot demonstrate a likelihood of success or a serious question as to the merits of their claims.

//

//

United States District Court
Northern District of California

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion for a TRO. The Court **ORDERS** the parties to file a joint statement proposing a schedule for disposition of the action or stipulating that the reasoning of this Order warrants dismissing the action for lack of jurisdiction and entering judgment. The parties' joint statement shall be filed by October 29, 2026.

**IT IS SO ORDERED.**

Dated: October 15, 2026

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**